UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>ANTHONY MASTANDUNO,<br><br>        Defendant. | DOCKET NO. 1:23-cr-434 (TSC)<br><br>**DEFENDANT'S MOTION TO REMAIN ON BOND PENDING SENTENCING** |

Anthony Mastanduno, by and through undersigned counsel, Assistant Federal Public Defender (WDNC) Rhett H. Johnson, moves this Court to allow him to remain on bond pending sentencing in this matter pursuant to 18 U.S.C.§ 3145(c). Alternatively, Mastanduno requests this Court permit him to plead guilty at the upcoming plea hearing on March 6, 2024, but defer formally adjudicating him guilty until his sentencing.

**I.   Introduction**

Mr. Mastanduno will be pleading guilty without a plea agreement to all nine counts against him. The plea hearing is currently scheduled for March 6, 2024. Mastanduno was arrested on August 23, 2023. When the authorities notified him of the pending arrest warrant, he voluntarily turned himself in. He was placed on pretrial bond and has strictly complied with his conditions of release. In view of his age coupled with his lack of criminal history, consistent history of employment, medical issues, and the unique context that gave rise to his criminal conduct,

1

Mastanduno maintains there are exceptional circumstances that weigh in favor of his continued release on bond pending sentencing.

## II.     Legal Standard

18 U.S.C. 3145(c) authorizes the Court to release a defendant upon a conviction of a felony drug offense or crime of violence pending sentencing if there are "exceptional reasons" why detention is not appropriate.  A violation of 18 U.S.C. 111(b) is considered a crime of violence for purposes of the Bail Reform Act. *See, e.g., United States v. Klein*, 533 F.Supp. 3d 1, 10 (D.D.C. 2021).

The statute does not further define what constitutes an exceptional reason. Likewise, the legislative history is "sparse and uninformative." *United States v. DiSomma*, 951 F.2d 494, 497 (2d. Cir. 1991).  As such, lenity favors broadly construing what may constitute an exceptional circumstance in this context. Judge Randolph C. Moss recognized that "a wide range of factors may bear upon the [§ 3145(c)] analysis," and a district court has "broad discretion … to consider all the particular circumstances of the case before it and [to] draw upon its broad 'experience with the mainsprings of human conduct.'" *United States v. Harris*, 451 F.Supp. 3d 64, 71 (D.D.C. 2020) (citations omitted).  The statute provides the Court with "considerable discretion" to make a finding of "exceptional reasons" based on a defendant's "purely personal circumstances." *United States v. Kaquatosh*, 252 F.Supp. 2d 775 , 778 (E.D. Wisc. 2003).

### III. Exceptional Reasons

With this framework in mind, Mastanduno maintains there are exceptional circumstances that weigh in favor of release pending sentencing.

### a. Offense Conduct

The most serious offenses Mastanduno is pleading guilty to are two counts of 18 U.S.C. 111(a)(1) and (b)) for Assaulting, Resisting, Impeding a Law Enforcement Officer with a Dangerous Weapon. Mastanduno recognizes that these offenses are categorically deemed crimes of violence for purposes of the Bail Reform Act. Count Two of the Indictment involves the use of a pole-like object that appears to be a hollow aluminum mop pole. *See* Dkt. No. 1. Count Three involves the use of a collapsible baton. With respect to Count Two, Mastanduno acknowledges that he lobbed the pole-like object over the crowd of protestors towards the area where the police officers were positioned in the mouth of the Capitol's West Terrace "tunnel." With respect to Count Three, Mastanduno acknowledges that he swung a collapsible baton towards the Capitol Police officers a few times for approximately 5 seconds before being subdued by pepper spray. He was also carrying a police riot shield that he had picked up off the ground.

His conduct was serious to be sure, particularly in view of how heavily outnumbered the police officers were at the time. However, the video footage does not clearly show Mastanduno making physical contact with any officer with his baton, much less physically injuring anyone other than himself. While this will be addressed in greater depth during the sentencing phase, it is nonetheless appropriate to

consider how actually violent his crime of violence was in making a release determination.

Aside from this brief flurry of activity at the tunnel area, the remainder of his conduct in the Capitol was unremarkable and even tame by comparison. From a review of the video footage from inside the Capitol, Mastanduno is amongst the least boisterous of the participants. He is not chanting, yelling, destroying property, arguing with police officers, or engaging in any other type of menacing conduct. At one point, while in the crypt area, he can be seen standing alongside some of the Capitol Police officers and appears to be compliant with their instructions. At another point, he can be seen rendering aid to another man who had been pepper sprayed.

      b.      **Mastanduno's Personal History and Characteristics**

Anthony "Tony" Mastanduno is 61 years old. And for his entire life—both before and after January 6—he has lived as a productive, law-abiding, service-oriented family man. Like his father before him and his son in his footsteps, he served in the United States Marine Corps. In 1987, he was honorably discharged at the rank of Corporal.

After leaving the Marine Corps, Mastanduno moved to Copiague, New York and began working as an armed security guard for Wells Fargo. Shortly thereafter, in 1988, he began a new career with the local electric company, that would later become Public Service Enterprise Group – Long Island ("PSEGLI"). He worked in various positions at PSEGLI for 35 years before his retirement in 2023. Much of his

work there involved physical labor and demanding hours. In addition to working full-time for the electric company, he also volunteered with the Copiague Fire Department beginning in 1988. He would serve in this capacity for approximately 15 years.

While working as a volunteer fireman, he met his future wife Jodi, who worked as a EMT with the fire department. They were married within months and have remained so for nearly 35 years. They have three children together. Mastanduno is a doting father who was very involved in the upbringing of his children.

After retiring in early 2023, Mastanduno, his wife, and their youngest child moved from New York to Rutherford County, North Carolina so they could enjoy a quiet retirement in a more rural area. They stay busy keeping up with the lives of their children—who are now young adults—working on their home and land, and volunteering with their local church. Since his arrest on the instant matter, Mastanduno has strived to get as much as possible done around their house in anticipation of his looming incarceration.

c.    **Medical Issues**[1]

███████████████████████████████████████
███████████████████████████████████████

---

[1] The information set forth in this section is based on both medical records obtained by counsel and collateral interviews. Counsel has obtained medical records to provide to the Probation Office to aid the preparation of the presentence report. However, should the Court wish to review any of this information prior to the plea hearing, counsel can either provide these materials to the probation office or file them under seal.





## IV. Argument

Again, Mastanduno recognizes that the 18 U.S.C. § 111(b) has been deemed a crime of violence for purposes of the Bail Reform Act under the categorical approach. While the much-criticized categorical approach often produces incongruent results that cut in a defendant's favor, in this instance, the opposite holds true. Mastanduno is guilty of committing a felony crime of violence for purposes of the Bail Reform Act even though he did not injure anyone at all. What is clear is that the Act's overarching concerns are risk of flight and dangerousness, and Mastanduno does not present a credible risk of flight or risk of danger to others.

Considering his personal history and characteristics, including his extensive, consistent history of employment, complete lack of a criminal record, and military

and civil service, Mastanduno is an exceedingly optimal candidate for continued release on bond. Moreover, it is not hard to imagine the difficulty he and others may experience if he is confined at a local jail unprepared to address his unique medical needs for a prolonged period of time.

Mastanduno was very much caught up in the fervor of the moment and made a series of misguided decisions for which he will bear the consequences. He understands and expects to receive a sentence of incarceration in this matter. To be clear, this request for continued release is not a misplaced hope or attempt to delay or avoid the inevitable. However, a Bureau of Prisons facility will be far better equipped to adequately address his medical issues that could render him an inadvertent threat to himself and others.

## V.   Conclusion

For these reasons, Mastanduno requests that this Court allow him to remain on bond pending sentencing in this matter.

Dated:  February 29, 2024                Respectfully Submitted,

s/**Rhett H. Johnson**
Rhett Hunter Johnson
W.Va. Bar #12114
N.C. Bar #35365 (inactive)
Assistant Federal Public Defender
Federal Public Defender for the
Western District of North Carolina
1 Page Avenue, Suite 210
Asheville, NC 28801
Phone: (828) 232-9992
Fax: (828) 232-5575
E-Mail: Rhett_Johnson@fd.org