**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:23-cr-434 (TSC)** |
| | : | |
| **ANTHONY MASTANDUNO,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO REMAIN ON BOND PENDING SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Response in Opposition to Defendant's Motion to Remain on Bond Pending Sentencing (ECF 31, portions of which were filed under seal). Following his March 5, 2024 guilty plea, the Defendant, Anthony Mastanduno, will have been found guilty on two counts of violating 18 U.S.C. § 111(b), which prohibits assault on a federal officer with a deadly or dangerous weapon. As discussed below, 18 U.S.C. § 3143(a)(2) mandates pre-sentencing detention after the Defendant's Section 111(b) convictions, and there are no exceptional reasons why Mastanduno's detention would be inappropriate. Therefore, this Court should deny Defendant's Motion.

**I.     Factual Background.**

        A.     <u>Defendant's Conduct on January 6, 2021.</u>

On January 6, 2021, the Defendant was wearing a red "Trump 2020 Keep America Great!" baseball cap with a patch on the bill; half of the patch depicted an American flag, while the other half depicted the Marine Corps emblem, the Eagle, Globe, and Anchor. The Defendant also wore a camouflage jacket, and a backpack. At times, he also donned large, clear goggles with a blast elastic strap.



Around 2:17 p.m. on January 6, 2021, the Defendant entered the U.S. Capitol Building through the Senate Wing Door, approximately four minutes after it was first breached by rioters who smashed windows and climbed in through them. Then, approximately five minutes later, around 2:21 p.m., the Defendant was at the front of a line of rioters who overwhelmed and overran police officers in the Crypt. The Defendant left the Capitol Building at around 2:38 p.m.

After exiting the Capitol Building, the Defendant unlawfully remained on Capitol grounds, and eventually made his way to the Capitol's Lower West Terrace. He made his way near to the mouth of the Lower West Tunnel—the location of the most violent episodes during the January 6 attack—where he watched and/or participated in violence for hours.

Beginning at approximately 2:42 p.m., numerous rioters attacked members of the U.S. Capitol Police ("USCP") and Metropolitan Police Department ("MPD") who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on

the Lower West Tunnel. Over the course of more than two hours, members of the mob threw items at police, struck police with objects, sprayed police with chemical irritants, pushed against the police, dragged uniformed officers into the crowd, and stole items from the police defending the tunnel.

At the Lower West Terrace, at around approximately 4:30 p.m., the Defendant began engaging with fellow rioters and participated in coordinated attacks on uniformed MPD who were defending the tunnel.

First, the Defendant picked up and threw a blue, flagpole-like object into the mouth of the tunnel, as if throwing a javelin or spear toward the line of outnumbered police officers who were defending the Capitol against the mass of rioters.



Within minutes, the Defendant then obtained a police shield that had been stolen from the officers, which he used to push against the same line of officers at the mouth of the tunnel. While he pushed, he also utilized a telescoping baton, which can be worn on one's hip and which expands in length, to strike at officers multiple times.



  



By approximately 4:45 p.m., the Defendant abandoned his position at the mouth of the tunnel after being sprayed with a chemical irritant spray, but remained nearby, apparently suffering from the effects of pepper spray. The Defendant remained near the Tunnel until officers regained control of the area, just after 5:00 p.m. on January 6, 2021.





Thus, at a minimum, the Defendant was illegally on Capitol grounds for at least three hours on Janaury 6, 2021, and was battling police for at least a portion of that time.

        B.      <u>This criminal case.</u>

A criminal complaint was filed against the Defendant on August 17, 2023. ECF 1. Prior to the Defendant's August 23, 2023 arrest, the Federal Bureau of Investigation ("FBI") conducted surveillance of his residence, which is located in a rural, heavily wooded area of North Carolina. During that surveillance, the FBI observed signage on the Defendant's property that read, in part, as follows: "This property is protected by a United States Marine who has a serious lack of negotiating skills, but is absolute hell in a gunfight." A photograph of that sign is below.



Thus, due to safety concerns, the FBI permitted the Defendant to self-surrender, which he did on August 23, 2023. ECF 5.

On December 13, 2023, after failed plea negotiations, the Defendant was indicted on nine charges, including two violations of 18 U.S.C. § 111(b) for assaulting, resisting, or impeding federal officers using a dangerous weapon. ECF 21, 29.

On February 13, 2024, the Defendant notified the Court that he intended to plead guilty to all of the crimes charged. ECF 26.

## II.     The Law Mandates That a Court "Shall Order" a Defendant Be Detained Pending Sentencing for Violating Section 111(b).

"To begin with, it is clear beyond cavil that, before a guilty plea or conviction, 'liberty is the norm and detention prior to trial or without trial is the carefully limited exception.'" *United States v. Wiggins*, 613 F. Supp. 3d 348, 353 (D.D.C. 2020). However, "[o]nce a defendant is convicted of an offense, a different detention statute, with different presumptions, applies—namely, 18 U.S.C. § 3143." *Id.* "In this circumstance, far from promoting liberty, a court is generally required *to detain* the defendant as the background rule, and, notably, this detention requirement comes in two varieties: there is either (1) a presumption of detention that a defendant can rebut with 'clear and convincing evidence' that he 'is not likely to flee or pose a danger to the safety of any other person or the community if released' under 18 U.S.C. § 3143(a)(1), or (2) mandatory detention for defendants who have been convicted of specified crimes, except in certain very narrow circumstances, under 18 U.S.C. § 3143(a)(2)." *Id.* (emphasis in original).

The question here surrounds detention pending sentencing; therefore, 18 U.S.C. § 3143 governs. 18 U.S.C. § 3143(a)(2) provides for mandatory detention for defendants who have been convicted of offenses set forth in 18 U.S.C. § 3142(f)(1)(A)–(C) and are awaiting sentencing.

Those qualifying offenses include, in relevant part, "a crime of violence . . .." 18 U.S.C. § 3142(f)(1)(A).

The D.C. Circuit has concluded that a violation of 18 U.S.C. § 111(b) is a crime of violence, which the Defendant concedes. ECF 31; *United States v. Quaglin*, 851 F. App'x 218, 219 (D.C. Cir. 2021) ("Appellant is charged with violating 18 U.S.C. § 111(b) – an offense which is categorically a crime of violence." (citing *Gray v. United States*, 980 F.3d 264, 268 (2d Cir. 2020)).

This Court, courts in this District, and courts nationwide agree. *See, e.g.*, *United States v. Miller*, No. 22-cr-412 (TSC), January 6, 2024 Minute Entry (detaining defendant pending sentencing following Section 111(b) conviction pursuant to plea agreement); *United States v. Ponder,* 21-cr-059 (TSC), April 22, 2022 Minute Entry (same); *United States v. Klein*, 533 F. Supp. 3d 1, 10 (D.D.C. 2021) ("The key question then is whether a defendant can be convicted of violating § 111(b) without 'the use, attempted use, or threatened use of physical force against the person or property of another.' . . . [E]very circuit to address the issue has answered that question in the negative, concluding that § 111(b) does constitute a 'crime of violence.' This Court agrees."); *United States v. Bullock*, 970 F.3d 210, 213 (3d Cir. 2020); *United States v. Bates*, 960 F.3d 1278, 1285 (11th Cir. 2020); *United States v. Kendall*, 876 F.3d 1264, 1269 (10th Cir. 2017); *United States v. Taylor*, 848 F.3d 476, 492-93 (1st Cir. 2017))); *United States v. Brockhoff*, 590 F. Supp. 3d 295, 301–02 (D.D.C. 2022) ("Defendant does not dispute that he is eligible for pretrial detention pursuant to § 3142(f)(1)(A) for having been indicted for a crime of violence, specifically for assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b)."); *United States v. Brown*, No. 21-MJ-565 (ZMF), 2021 WL 4033079, at *3 (D.D.C. Sept. 3, 2021), *aff'd*, No. 21-3063, 2021 WL 5537705 (D.C. Cir. Nov. 17, 2021) ("Brown is charged with assaulting, resisting, or impeding federal officers using a dangerous

weapon in violation of 18 U.S.C. § 111(b). Because that offense is categorically a crime of violence, Brown is eligible for pretrial detention."); *United States v. Fitzsimons*, No. 21-CR-158, 2021 WL 4355411, at *3 (D.D.C. Sept. 24, 2021), *aff'd* No. 21-3069, 2021 WL 6102443 (D.C. Cir. Dec. 17, 2021) ("Among other offenses, Fitzsimons is charged with assaulting, resisting, or impeding federal officers resulting in bodily injury in violation of 18 U.S.C. § 111(b). Because that offense is categorically a crime of violence, Fitzsimons is eligible for pretrial detention."); *United States v. Gieswein*, No. CR 21-24 (EGS), 2021 WL 3168148, at *8 (D.D.C. July 27, 2021), *aff'd*, No. 21-3052, 2021 WL 5263635 (D.C. Cir. Oct. 19, 2021) ("[U]sing a deadly or dangerous weapon while assaulting a federal officer is a crime of violence."); *United States v. Krol*, No. CR 22-110 (RC), 2022 WL 16948611, at *4 (D.D.C. Nov. 15, 2022) ("Among other offenses, Krol has been charged with assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). Because that offense is categorically a crime of violence, Krol is eligible for pretrial detention."); *United States v. McAbee*, No. CR 21-35-7 (EGS), 2021 WL 6049909, at *7 (D.D.C. Dec. 21, 2021), *reconsideration denied*, No. CR 21-35-7 (EGS), 2022 WL 4016616 (D.D.C. Sept. 3, 2022), *aff'd*, No. 22-3066, 2022 WL 17101252 (D.C. Cir. Nov. 22, 2022) ("[A] defendant charged under 18 U.S.C. § 111(a)(1) and (b) is charged with a crime of violence.").[1]

---

[1] Although detention is presumed mandatory for crimes of violence, 18 U.S.C. § 3143(a)(2)(A)-(B) provides enumerated carve-outs where mandatory detention is not required, neither of which apply here. Section 3143(a)(2) states that detention is mandatory unless:

(A)

(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; **or**

(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; **and**

### III.    No "Exceptional Reasons" Justify Release Pending Sentencing.

As the Defendant concedes, detention is mandatory following a conviction under Section 111(b). However, in addition to minimizing the seriousness of his conduct, the Defendant argues that he may be ordered released due to "exceptional circumstances" under 18 U.S.C. § 3145(c). He argues the following bases are "exceptional": (1) his age, (2) his lack of criminal history, (3) his consistent history of employment, (4) his medical issues, and (5) the unique context that gave rise to his criminal conduct, meaning, January 6, 2021. *Id.* The government respectfully submits that these bases are not sufficiently out of the ordinary, uncommon, or rare for the Defendant to avoid mandatory detention.

In certain very limited circumstances, "[a] person subject to detention pursuant to section 3143(a)(2), . . . and who meets the conditions of release set forth in section 3143(a)(1) . . ., may be ordered released, under appropriate conditions, by the judicial officer, *if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.*" 18 U.S.C. § 3145(c) (emphasis added). "Congress did not define the term 'exceptional reasons' in the statute, nor did it provide examples, so, naturally, courts have laid out their own standards." *Wiggins*, 613 F. Supp.3d at 356 (denying emergency request for release pending sentencing due to COVID-19 pandemic). "[C]ourts typically understand the phrase to mean circumstances that are 'clearly out

---

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2)(A)-(B) (emphasis added). Thus, in order to reject mandatory detention, the Court must make a finding under both subsection (A) and subsection (B).

Here, the government submits that there is no substantial likelihood that a motion for acquittal or new trial will be granted. Furthermore, the government will be seeking a sentence of imprisonment. Therefore, neither of the two subsections in 18 U.S.C. § 3143(a)(2)(A) apply, the requirements for carve-out are not fulfilled.

of the ordinary, uncommon, or rare.'" *United States v. Lovo*, 263 F. Supp. 3d 47, 49 (D.D.C. 2017) (quoting *United States v. Hite*, 12-CR-65, 2013 WL 12158577, at *2 (D.D.C. July 30, 2013), *aff'd*, 540 F. App'x 2 (D.C. Cir. 2013)).

Indeed, "[t]his 'escape hatch' is quite narrow and only rarely successfully invoked . . . In this jurisdiction, section 3145(c) has almost only applied to release due to the COVID-19 pandemic." *United States v. Geraghty*, No. CR 22-096-10 (CKK), 2023 WL 6199085, at *2 (D.D.C. Sept. 22, 2023) (collecting cases). Moreover, such exceptional reasons "should set the defendant apart from anyone else convicted of a similar crime or crimes." *United States v. Wise*, No. 3:20-CR-46, 2023 WL 4554091, at *3 (E.D. Tenn. July 14, 2023); *United States v. Hamm*, No. 4:19-CR-00613 SRC, 2021 WL 1669973, at *11 (E.D. Mo. Apr. 27, 2021), *aff'd*, No. 21-2021, 2021 WL 5071464 (8th Cir. May 21, 2021) ("to constitute 'exceptional reasons' under section 3145(c), the Court must find that Hamm's 'case is clearly out of the ordinary, uncommon, or rare when compared to **every other defendant** convicted" of the same offenses, "all of whom are subject to mandatory detention under [section] 3143(a)(2)") (emphasis added).

Courts in this and other districts have taken a narrow view of what constitutes "exceptional reasons," and have rejected every basis on which Defendant asserts he should be excepted from detention:

- "[P]rior compliance with conditions of release and 'conformance to society's expectations,' e.g., law-abidingness and nonviolence, 'are not exceptional—these behaviors are expected of all defendants.'" *Geraghty*, 2023 WL 6199085, at *2 (collecting cases).

- All of the following are not exceptional reasons: "(1) age (53); (2) lack of prior criminal record; (3) use of a wheelchair and need for a special mattress to avoid pain; (4) limited ability to hear, ... and (5) need to care for his elderly mother, who also is deaf and has only a limited ability to see." *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008).

11

- Family hardship caused by incarceration is not an exceptional reason. *United States v. Mahabir*, 858 F. Supp. 504, 508 (D. Md. 1994); *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999).

- A person's medical conditions that be adequately treated by the jail/prison facility are not exceptional reasons. *Rodriguez*, 50 F. Supp. 2d at 722.

- A person's employment, family support, and community connections are not exceptional reasons. *Lovo*, 263 F. Supp. 3d at 51; *see also Mellies*, 496 F. Supp. 2d at 937 (family support is not an exceptional reason).

- Continuing rehabilitative therapy is not an exceptional reason. *United States v. Sharp*, 517 F. Supp. 2d 462, 465 (D.D.C. 2007).

- The desire to spend time with a young child is not an exceptional reason. *United States v. Bryant*, 873 F. Supp. 660, 663 (N.D. Ga. 1994).

- The pregnancy of a teenage daughter is not an exceptional reason. *United States v. Taliaferro*, 779 F. Supp. 836, 838 (E.D. Va. 1992), *aff'd*, 993 F.2d. 1541 (4th Cir. 1993).

- Being employed is not an exceptional reason. *Lea*, 360 F.3d at 403-04.

- A defendant's low flight risk or lack of danger to the community is not an exceptional reason. *Hite*, 72 F. Supp. 3d 29 at 34.

Defendant focuses most heavily on his health issues, but fails to demonstrate that they are "extraordinary." Defendant has not provided the government with medical records to substantiate his claims or describe his required treatment protocol, but, even as described in his motion, the Defendant's medical issues are not so severe that they require an exception to mandatory detention, and the Defendant does not argue that he requires a particular treatment unavailable within the Bureau of Prisons system. The Defendant was clearly sufficiently healthy and well-functioning to plan a trip to Washington, D.C. for January 6, where he remained on his feet for many hours, ███████████████████, and where he was strong enough to battle with the police. In addition, he was able to hold a physically demanding job for the last 35 years (through 2023)

and rear his three children, who are "young adults." The other recent issue he cites 

Moreover, were the Court to find "exceptional" any of the bases upon which Defendant seeks to avoid mandatory detention, the "extraordinary" limitation would lose its meaning. This is true with respect to the Defendant's military-related health issues, where, particularly in context of January 6, many defendants have been military veterans who have cited service-related mental and physical health issues – to say nothing of defendants convicted of other crimes who may have faced past traumas or suffered injuries. *See, e.g., United States v. Alberts,* No. 21-CR-00026 (CRC), ECF 159, 171 (both at trial and at sentencing, defendant argued "certain military-related injuries" as "an Iraqi War veteran" warranted acquittal and/or a reduced sentence) (sentenced to 84 months' incarceration); *United States v. Thomas,* No. 21-cr-00552 (DLF), ECF 202, 216, 231-32 (defendant argued his service-related mental and physical health issues justified below-Guidelines sentence); *United States v. Mault,* No. 21-cr-00657 (BAH), ECF 63, 79 (defendant

---

2

argued that service-related PTSD justified below-Guidelines sentence) (sentenced to 44 months' incarceration); *United States v. McGrew*, No. 21-cr-00398 (BAH), ECF 88, 114 (defendant argued military-related injuries, including PTSD, justified below-Guidelines sentence) (sentenced to 78 months' incarceration); *United States v. Keuhne,* No. 21-cr-00160 (TJK), ECF 256, Feb. 23, 2024 Sent. Tr. (not yet available) (defendant argued serious military-related injuries, including metal spinal hardware, PTSD, a traumatic brain injury, and sleep apnea requiring a CPAP machine, warranted home detention) (sentenced to 75 days' incarceration).  Again, Defendant does not show his conditions arise to the "extraordinary" level. *Hamm*, 2021 WL 1669973 at *11.

This is also true with respect to the Defendant's assertion regarding the uniqueness of January 6: while everyone can agree that the "context that gave rise to [Defendant's] criminal conduct"—the events of January 6—were "unique," that cannot warrant an exceptional designation, or all January 6 defendants, who are not detained for dangerousness or risk of flight, would be released under Section 3145. Likewise, because the event was unique, every defendant implicated in the events of January 6 could also argue that her or his actions on that day were aberrant. That cannot mean that reason is exceptional so as to permit pre-sentencing release. In fact, contrary to Defendant's assertion, the "uniqueness" of the January 6 riot actually supports detention, not finding an exception to it:  we are again in an election year and the very pressures that sparked what became a violent riot on January 6, 2021 may again be at play this year.

Further, many defendants are compliant with the terms of their pretrial release, appear for proceedings as necessary, and are cooperative with the Probation Office. *Hite*, 72 F. Supp. 3d at 33-45 (denying release despite the defendant's record of living in the community under supervision). Indeed, they are required to do so by court order. Although commendable, compliance cannot be exceptional. Such compliance is expected.

In summation, because a violation of Section 111(b) is categorically a crime of violence, it is one of the crimes included in 18 U.S.C. § 3142(f)(A)-(C). This, in turn, means that 18 U.S.C. § 3143(a)(2) governs the Defendant's pre-sentencing detention. The government will be recommending that a prison sentence be imposed, and there is no substantial likelihood that a motion for acquittal or new trial will be granted. For these reasons, and because the Defendant cannot demonstrate "extraordinary reasons" beyond what many defendants face, he must be detained prior to his sentencing.

## CONCLUSION

For these reasons, the Court should deny the Defendant's Motion.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:   */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov