**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:23-cr-434 (TSC)** |
| | : | |
| **ANTHONY MASTANDUNO,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENT TO ITS SENTENCING MEMORANDUM**
**REGARDING RESTITUTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplement to its sentencing memorandum as it relates to restitution. As shown at sentencing, Mastanduno participated in the attack on the U.S. Capitol on January 6, 2021. He directly assaulted a number of individual officer-victims and caused emotional distress and related financial losses for at least one of those officers, MPD Officer T.C. Mastanduno also proximately caused harm to the Architect of the Capitol, the House Chief Administrative Officer, the Secretary of the Senate, the Senate Sergeant at Arms, and the United States Capitol Police ("USCP" – collectively, the "Architect of the Capitol"). *See* 18 U.S.C. § 3664(i) (authorizing restitution to federal agencies). Because MPD Officer T.C. specifically requested restitution in his victim impact statement (which was submitted by email to chambers), this supplement discusses why the Court should order restitution to MPD Officer T.C. as well as to the Architect of the Capitol.

I.  **Applicable Law.**

A.  <u>Restitution Generally.</u>

"The primary goal of restitution is remedial or compensatory[.]" *Paroline v. United States*, 572 U.S. 434, 456 (2014). Restitution should "restore a victim, to the extent money can do so, to the position the victim occupied before sustaining injury." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (alteration in original accepted) (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)); *see also Dolan v. United States*, 560 U.S. 605, 612 (2010) (explaining that restitution "seeks primarily to ensure that victims of a crime receive full restitution").

As noted in the government's initial sentencing memorandum (ECF 43 at 46-50), under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose restitution in a federal criminal case. Because a federal court possesses no "inherent authority to order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011).

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *Papagno*, 639 F.3d at 1096; *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). In addition, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA. *Papagno*, 639 F.3d at 1096. The MVRA applies to certain offenses including those "in which an identifiable victim or victims has suffered a physical injury

or pecuniary loss," 18 U.S.C. § 3663A(c)(1)(B), a "crime of violence," § 3663A(c)(1)(A)(i), or "an offense against property … including any offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii). *See Fair*, 699 F.3d at 512 (citation omitted).

Importantly, courts must order defendants to make restitution "to reimburse the victim for income lost by such victim as a result of such offense," and "if a victim as received compensation from . . .any other source with respect to a loss, the court shall order that restitution to be paid to the person who provided or is obligated to provide the compensation." 18 U.S.C. §§ 3663A(b)(2)(C), 3664(j)(1).

The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both [t]he VWPA and MVRA require identification of a victim, defined in both statutes as "a person directly and proximately harmed as a result of" the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA). Both statutes identify similar covered costs, including lost property and certain expenses of recovering from bodily injury. *See Papagno*, 639 F.3d at 1097-97; 18 U.S.C. §§ 3663(b), 3663A(b). Finally, under both the statutes, the government bears the burden by a preponderance of the evidence to establish the amount of loss suffered by the victim. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019).

In deciding whether to impose restitution under the VWPA, the sentencing court must take account of the victim's losses, the defendant's financial resources, and "such other factors as the court deems appropriate." *United States v. Williams*, 353 F. Supp. 3d 14, 23-24 (D.D.C. 2019)

3

(quoting 18 U.S.C. § 3663(a)(1)(B)(i)). The MVRA, by contrast, requires imposition of full restitution without respect to a defendant's ability to pay.[1]

B. Restitution under the VWPA and MVRA Is Appropriate to Compensate the Victims[2] for Harm January 6 Defendants Have Caused.

Under both the VWPA and MVRA, Congress has given the courts broad discretion to craft restitution orders that fully compensate crime victims while recognizing defendants' varying degrees of culpability. *See United States v. Monzel*, 930 F.3d 470, 478 (D.C. Cir. 2019) (explaining that the D.C. Circuit "review[s] a restitution for an abuse of discretion" and "examine[s] the factual findings underpinning the order for clear error" (citation omitted)). Because the January 6 cases involve the related criminal conduct of hundreds of defendants, all of whom proximately caused loss to the victims, the courts can allocate restitution based on incremental culpability and, in the conspiracy cases, impose joint and several liability. Critically, most, if not all, January 6 defendants proximately caused harm to the victims in this case, including Congress. Therefore, restitution

---

[1] Both statutes permit the sentencing court to decline to impose restitution where doing so will "complicat[e]" or "prolong[]" the sentencing process. *See* 18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

[2] As noted above, the victims here are MPD Officer T.C., as well as the Architect of the Capitol, the federal agency charged with operating and maintaining the physical and esthetic integrity of the Capitol Building and Grounds, the House Chief Administrative Officer, the Secretary of the Senate, the Senate Sargent at Arms, and the United States Capitol Police Department, several hundred of whose officers were guarding the Capitol Building and Grounds on January 6 when they suffered physical and/or emotional injuries as a direct result of the riot. *See* 18 U.S.C. § 3664(i) (authorizing restitution to federal agencies).

ought to be imposed regardless of whether a defendant personally injured a police officer or damaged property (although, in this case, the defendant did harm a police officer).

To determine whether a criminal defendant bears responsibility for the harm the offense caused, the relevant inquiry is the scope of the defendant's offense conduct and the harm the victim suffered as a result. *See Hughey,* 495 U.S. at 413 (Congress "authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction"). Broader restitution is permitted where the offense of conviction contains as an element a scheme, conspiracy, or pattern of criminal activity, 18 U.S.C. § 3663(a)(2) (VWPA); 18 U.S.C. § 3663A(a)(2) (MVRA), or if a plea agreement allows for a greater amount. *United States v. Mastanduno*, 862 F. Supp. 2d 19, 21 (D.D.C. 2012).

Significantly for the January 6 cases, a "reasonable estimate" or reasonable approximation of loss is sufficient, "especially in cases in which an exact dollar amount is inherently incalculable." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013); *see United States v. Sheffield*, 939 F.3d 1274, 1277 (11th Cir. 2019) (estimating the restitution figure is permissible because "it is sometimes impossible to determine an exact restitution amount") (citation omitted); *see also Paroline*, 572 U.S. at 459 (observing in the context of the restitution provision in 18 U.S.C. § 2259 that the court's job to "assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader casual process that produced the victim's losses . . . cannot be a precise mathematical inquiry"). "The determination of an appropriate restitution amount is by nature an inexact science." *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993). "[W]here the precise amount [of restitution] owed is difficult to determine, 18 U.S.C. § 3664 authorizes the court to reach an expeditious, reasonable determination

of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." *Id.* (citing S. Rep. No. 532, 97th Cong., 2d Sess. 31, reprinted in 1982 U.S. Code Cong. & Admin. News 2515, 2537) (cleaned up).

      C.    <u>Courts in this District Have Routinely Found Restitution for Officer-Victims and the Architect of the Capitol Appropriate in January 6 Cases.</u>

Relying on the above principles, restitution has been ordered in over 500 January 6-related cases, including in cases before this Court and others in this District. For example, just last week, the Court in *United States v. Todd* issued a memorandum and order discussing why a nearly identical restitution request was warranted. *See* 21-cr-00166 (BAH), ECF 247. There, the defendant was convicted by jury on all counts, including a Section 111(b) assault, and was sentenced to 61 months' incarceration. *See id.* at 1. The government sought an order requiring defendant to pay $2,514.68 to MPD, pursuant to the MVRA and VWPA, and $2,000 in restitution to the Architect of the Capitol (as defined herein), pursuant to the VWPA. *See id.* at 3-4 (citations omitted). After briefing, the Court entered the requested order.

First, the court noted that restitution was "mandatory, under the MVRA, for defendant's conviction, in Count 2, of inflicting bodily injury on Officer R[ ], in violation of 18 U.S.C. § 111(a)(1) and (b), because 18 U.S.C. § 111(b) is 'categorically a crime of violence.'" *Id.* at 4 (citing *United States v. Quaglin*, 851 F. App'x 218, 218–19 (D.C. Cir. 2021) (collecting cases)). The court then ordered that Officer R be compensated for the medical expenses incurred "in connection with the assault," and that MPD be compensated for that officer's nine days of missed work. *See Todd*, 21-cr-00166 (BAH), ECF 247 at 4. The court also ordered $2,000 in restitution for losses to the Architect of the Capitol, noting as follows: (1) Restitution is discretionary, under the VWPA, for

defendant's convictions 18 U.S.C. § 1752(a)(1)-(2) convictions; (2) under the VWPA, restitution is available "only to the extent the defendant's offense proximately caused a victim's losses," *Paroline*, 572 U.S. at 448, and "[p]roximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct," *id.* at 445; and, (3) "[t]he only question in dispute is how proximate causation applies to this case, where defendant is one of many individuals who contributed to damage to the Capitol." *Id.* at 6 (internal quotations omitted).

On the question of whether the defendant should be liable for restitution to the Architect of the Capitol, the court reasoned that, "[a]lthough defendant is not charged with destroying property and thus 'it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was part of the overall phenomenon' that caused harm to the Capitol," including joining a mob that repeatedly pushed against police officers. *See id.* at 6 (citing *Paroline*, 572 U.S. at 456–57). The court found that "[the] defendant was an active participant in the mob that caused $2.9 million of damages, thereby directly contributing to the violence that ultimately overpowered the police, allowed for the Capitol to be breached, and enabled other members of the mob to damage the building," *id.* at 7 and concluded that where, as here, "a wrongdoer's conduct, though [perhaps] alone insufficient to cause the [victim's] harm, is, when combined with conduct by other persons, more than sufficient to cause the harm," "[t]reating [defendant] as a cause of a smaller amount of the victim's general losses, taking account of his role in the overall causal process behind those losses," effects the purpose of restitution, "avoids the nonsensical result of turning away victims emptyhanded," and "does so without sacrificing the need for proportionality in sentencing," *id.* at 8 (citing *Paroline*, 572 U.S. at 452, 461). *See also Monzel*, 930 F.3d at 476–77, 485 (affirming $7,500 in restitution toward more than a $3 million

7

total loss, against a defendant who possessed a single pornographic image of the child victim).

Judge Friedrich applied a similar rationale in *United States v. Thomas,* 21-cr-552 (DLF) and *United States v. Ramey,* 22-cr-184 (DLF). The defendants in those cases were convicted of assaulting officers in violation of 18 U.S.C. § 111, including, in *Ramey*, with a dangerous weapon (pepper spray). Both defendants also were convicted of civil disorder in violation of 18 U.S.C. § 231. However, no officer-victim sought restitution for physical injuries. At sentencing in *Thomas*, Judge Friedrich concluded that $2,000 in restitution to the Architect of the Capitol was proper under both the VWPA and the MVRA because of the causal link between Thomas's actions and the losses incurred by the Architect of the Capitol: "Here, Mr. Thomas's conduct proximately caused the relevant harm. The government need not show that Mr. Thomas's individual conduct alone caused losses to the government, given that Thomas was a part of a crowd that assaulted multiple officers, he himself was responsible for knocking one of those officers to the ground. The fact that the officer did not sustain physical injuries does not mean Mr. Thomas can avoid a liability here." *United States v. Thomas,* 21-cr-552 (DLF), Nov. 16, 2023 Sent'g Tr. at 274-75. *See also id.* ("Awarding restitution is not an exact science. The government has submitted a financial breakdown [under seal] that shows nearly 3 million in losses that include both property damage as well as expenses for officers' compensation and injuries. Given Mr. Thomas's aggressive offensive conduct and his persistent skirmishes with the [MPD] officers on the Upper West Terrace, the Court believes that $2,000 is a fair and appropriate sum that is consistent with the sums that were imposed in other similar cases."). Similarly, in *Ramey*, Judge Friedrich determined that restitution was warranted because "Mr. Ramey was certainly responsible, the Court believes, for the additional need of reinforcements, given his actions against the officers." 22-cr-184 (DLF)*,*

July 7, 2023 Sent. Tr. 3:20-4:6.

Courts in this District, including this Court, have agreed. *See, e.g., United Sates v. Vo*, 21-cr-0509 (TSC) April 10, 2024 Sent'g Tr. 54:1-2 (The defendant "does not have to be personally responsible for the destruction to be liable for restitution."); *United States v. McAbee,* 21-cr-35 (RC), Dkt 464 (Sent'g Tr. 53:8-20) ("Defendant was part of the mob, and the mob was the proximate cause of the diffuse harm, resulting in millions of [dollars in] losses."); *United States v. Bledsoe,* 21-cr-204 (BAH), Oct., 21, 2022 Sent'g Tr. at 111 ("[o]rdering you to pay $2,000 to approximate the harm caused, recognizing the practical and legal difficulties in allocating loss amounts across all January 6 defendants, is the appropriate choice here"); *United States v. Wood,* 21-cr-223 (APM) Jan. 20, 2023 Sent'g Tr. at 42 ("And while Mr. Wood… didn't destroy anything—certainly his presence there aided and abetted, particularly given how close he was to some of the windows that were shattered, in that conduct, in assisting and aiding and abetting that conduct. I do think the $2,000 is appropriate as restitution as that is consistent with the felony amounts that have been—with felonies, as has been the case across these January 6th proceedings.").

As the above shows, an approximation of restitution is plainly appropriate in January 6 cases.

II.     **The Court Should Order Mastanduno to Pay the Requested Restitution.**

A.  $2,000 in Restitution to the Architect of the Capitol is Appropriate.

The government's current calculation of losses arising from the riot include the following:

**Damages to the Capitol Building and Grounds**

| Architect of the Capital | $1,135,200.03 |
|---|---|
| House Chief Administrative Officer | $547,411.27 |
| Secretary of the Senate | $32,075.00 |
| Senate Sergeant at Arms | $79,490.05 |
| Total | $1,794,176.35 |

**Damages Incurred by the United States Capitol Police Department[3]**

| Continuation of Pay (COP)/Workers Comp and Medical Treatment | $1,045,129.80 |
|---|---|
| Lost and Damaged Property | 41,719.90 |
| Total | $1,086,849.70 |

**Total**

| Total for both groups | $2,881,026.05 |
|---|---|

Mastanduno's case should fare no differently the above-cited cases, particularly as he did not appear to object to the government's requested $2,000 restitution amount in his sentencing memorandum (ECF 45). Like the defendants noted above, Mastanduno arrived at the U.S. Capitol on January 6, 2021 ready for violence: he wore a "Veterans for Trump" hat, goggles, and a painter's mask. After aiding other rioters who assaulted police on the Northwest Steps, Mastanduno was one of the first rioters to enter the Capitol Building, where he spent over 20 minutes inside. He was among the mob that overwhelmed police officers defending the Crypt. Nearly two hours later by the tunnel entrance, Mastanduno watched close up as other rioters attacked the police, including by dragging officers out of the tunnel. Mastanduno then joined in the violence, launching a flagpole javelin-style into the mouth of the tunnel, which he knew was

---

[3] In around March 2023, MPD submitted a total of approximately $629,056 in restitution amounts; this number is not includedin approximately $2.9 million figure discussed in this memorandum.

full of uniformed police officers. That flagpole made physical contact with Officer T.C. Mastanduno then used a stolen police riot shield to push against the front line of officers defending that space, including Officer T.C., and repeatedly struck the officers with a telescoping baton.

As this Court and other courts have noted, when thousands of people stormed the United States Capitol Building on January 6, 2021, they overwhelmed the severely outnumbered USCP officers, thinning their ranks as they tried to hold back the mob, forcing them to call in reinforcements from nearby law enforcement agencies, including the MPD, the Prince George's County Police Department, and the FBI. Mastanduno, for many hours, joined the riotous attack, and his offenses of conviction contributed to the harm inflicted upon the officers and required the reinforced police response.

Like Todd, Thomas, Ramey, Vo, and scores of other January 6 defendants, Mastanduno should be ordered to pay $2,000 in restitution for the proximate damage he caused to the Architect of the Capitol.

B.  <u>$2,174 in Restitution to Officer T.C. is Required.</u>

Prior to January 6, Officer T.C. rarely took time off. However, as a result of the events of January 6, 2021 – including two assaults by the defendant – Officer T.C. was forced to take significant time off throughout 2021, which Officer T.C. attributes to recovering from the physical and emotional trauma he suffered on January 6, 2021. *See* <u>Attachment 1</u> (explanation and overview of Officer T.C.'s time off in 2021, to be filed under seal). Under the MVRA, expended leave time is a loss for which courts have held victims must be compensated. *See United States v. Lewis*, 155 F. App'x 897, 898 (7th Cir. 2005) (upholding restitution for a deputy sheriff's "injury and resulting time away from the job" due to injuries sustained in connection with the defendant's arrest); *United*

*States v. Jacobs*, 167 F.3d 792, 796 (3d Cir. 1999) ("the District Court was correct in concluding" that "the economic loss occasioned by the loss of annual and restored leave" "was a proper component of the restitution award"); *Todd*, 22-cr-00166 (BAH), ECF 247 at 4-5 (holding restitution was "mandatory, under the MVRA," for defendant a Section 111(b) conviction because it is 'categorically a crime of violence'" and ordering defendant to compensate MPD for the nine day of work defendant's officer-victim missed due to January 6).

Officer T.C.'s body-worn camera depicts him in the most violent area, the Lower West Tunnel, from approximately 4:29 p.m. to 4:52 p.m.[4] During that time, he was violently attacked by rioters approximately eight times. *See* Attachment 2 (video exhibit, to be submitted electronically via USAfx).[5]  Because Mastanduno is responsible for two of those eight attacks (Attacks 1 and 3, referenced in footnote five, below), the government submits that the Court should estimate the restitution owed by Mastanduno to Officer T.C. by dividing Officer T.C.'s losses by eight and attributing two-eighths (*i.e.* one-fourth) of that amount to Mastanduno. *See* 18 U.S.C.

---

[4] Although the day as a whole was undoubtedly traumatic for all officers involved, other than his time in the tunnel on the Lower West Terrace, Officer T.C.'s BWC shows that he spent time on January 6 primarily in or around the Rotunda, where he did not experience extreme, medieval combat-like circumstances to the same extent as in the tunnel. *See* ECF 43 at 8.

[5] In the video exhibit, one can see the following: Attack 1 begins at approximately 4:30:30 p.m. (Mastanduno pole throw); Attack 2 begins at approximately 4:31:44 p.m. (rioter begins violently throwing various objects); Attack 3 begins at approximately 4:32:08 p.m. (Mastanduno steps up with stolen riot shield and begins assaulting police line with baton); Attack 4 begins at approximately 4:33:40 p.m. (renewed surge in violence as rioters again throw many objects at police line); Attack 5 begins at approximately 4:42:00 p.m. (another renewed surge in violence as rioters re-start their attack, including with what appears to be pepper spray); Attack 6 beings at approximately 4:43:35 (rioter attacks officers by repeatedly using stolen police riot shield); Attack 7 begins at approximately 4:46:40 p.m. (rioters charge and throw objects at police line); Attack 8 begins at approximately 4:50:00 p.m. (rioters again charge and throw objects at police, finally forcing Officer T.C. to retreat to safety).

§ 3664(h) ("If the court finds that more than one defendant contributed to the loss of a victim, the court . . . may apportion liability among the defendants to reflect the level of contribution the victim's loss").

Based on the information in Attachment 1, one-fourth of Officer T.C.'s total time off is the equivalent of $2,1742. Therefore, the United States requests that defendant Mastanduno be ordered to pay $2,174 in restitution for Officer T.C.'s pecuniary loss.

## CONCLUSION

Based on the foregoing and the bases set forth the government's prior sentencing recommendation, the government requests that the Court order the defendant to pay $2,174 in restitution for Officer T.C.'s losses, and $2,000 in restitution to the Architect of the Capitol for its losses.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov